IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SNYDERS HEART VALVE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ST. JUDE MEDICAL S.C., INC., *et al.,*<br><br>    Defendants. | CIVIL ACTION NO. 4:16-cv-812<br><br>**JURY TRIAL DEMANDED** |

**MOTION TO EXCLUDE CERTAIN REBUTTAL EXPERT OPINIONS
OF DR. UGONE AND MR. CHANDLER**

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. SJM EXPERT OPINIONS REGARDING SJM'S PATENTS SHOULD BE EXCLUDED BECAUSE THEY ARE IRRELEVANT AND PREJUDICIAL ...............1

III. SJM EXPERT OPINIONS REGARDING SJM'S PATENTS SHOULD BE EXCLUDED BECAUSE THERE IS NO EVIDENCE THAT THE ACCUSED PRODUCTS MEET THE CLAIM LIMITATIONS OF ANY CLAIM OF ANY SJM PATENT .........................................................................................................................4

IV. DR. UGONE AND MR. CHANDLER'S OPINIONS RELATED TO THE SJM PATENTS SHOULD BE EXCLUDED BECAUSE THE SJM PATENTS ISSUED WELL AFTER THE HYPOTHETICAL NEGOTIATION DATE.................................7

V. DR. UGONE AND MR. CHANDLER'S OPINIONS REGARDING ASSERTING THAT THE ACCUSED PRODUCTS ARE NOT "EXCLUDED FUNNEL VALVE" PRODUCTS SHOULD BE EXCLUDED........................................................................8

VI. CONCLUSION..............................................................................................................9

**I.     INTRODUCTION**

The Court should preclude SJM's experts from mentioning SJM's patents to the jury and from arguing or offering evidence that SJM was practicing its own patents. In their expert reports on damages issues, Dr. Ugone and Mr. Chandler opine regarding various SJM patents that they assert "cover" the accused Portico products.[1] They contend that SJM's patents (filed years after the patents-in-suit issued) show that SJM would have had a strong negotiating position at the time of the hypothetical negotiation. But SJM's damages experts do not need to mention SJM's patents in order to make their arguments that SJM's contribution to the technology in the accused products would have strengthened SLM's negotiating position. SJM's expert opinions that mention SJM's patents are irrelevant and prejudicial, and for that reason alone, the Court should exclude such opinions.

Even if their opinions weren't irrelevant and prejudicial, the Court should still exclude the expert opinions regarding SJM's patents because: 1) there is no competent evidence that any claim of any SJM patent covers the accused products, and 2) SJM admits that all of the SJM utility patents issued well after the hypothetical negotiation date, and has no explanation as to how SJM's design patents would be relevant to any damages issue.

Finally, both Dr. Ugone and Mr. Chandler provide opinions that accused products are not "Excluded Funnel Valve" products. But these opinions are based on SJM's rejected claim construction arguments. Allowing SJM to re-argue its claim construction positions through its experts in front of the jury would be prejudicial and should not be allowed.

**II.     SJM EXPERT OPINIONS REGARDING SJM'S PATENTS SHOULD BE EXCLUDED BECAUSE THEY ARE IRRELEVANT AND PREJUDICIAL**

---

[1] Dr. Sacks and Dr. Brown also provide short and unsupported opinions that assert that the SJM patents cover the accused products. These opinions should also be excluded as explained below.

1

Dr. Ugone and Mr. Chandler's damages expert reports are peppered with references to SJM's patents.[2] For example, in the Summary of Opinions section of Dr. Ugone's report states that, among other reasons, Ms. Schenk's opinions are unreliable and overstate the damages for because "Ms. Schenk fails to appropriately consider (a) St. Jude's patents . . . . St. Jude has numerous patents covering the Accused Products." Ex. A at ¶ 22(a).[3] Dr. Ugone's report goes on to state, "Ms. Schenk does not perform an appropriate apportionment to account for the value that St. Jude's intellectual property (i.e., at least 17 U.S. utility patents and 4 U.S. design patents) has contributed to the demand for (and profitability associated with) the Accused Products." *Id.* at ¶ 22(b). The following is a similar example from Mr. Chandler's report: "Ms. Schenk fails to appropriately consider and give proper weight to the following: . . . St. Jude's patents on its heart valve and TAVR products." Ex. B at ¶ 22(a).[4]

But whether SJM has patents that cover the accused products is irrelevant to the point that Dr. Ugone and Mr. Chandler are trying to make. SJM's damages experts appear to be arguing that Ms. Schenk's opinions fail to account for SJM's contributions to the accused products. Whether SJM has a patent on those contributions has nothing to do with whether SJM

---

[2] Dr. Ugone opines that there are 21 U.S. patents that "cover" the accused Portico products. Mr. Chandler opines that only 11 of the 21 SJM patents "cover" the accused Portico products. It appears that Dr. Ugone relied on SJM's supplemental response to Interrogatory No. 15, while Mr. Chandler relied on SJM's original response to Interrogatory No. 15.

[3] Dr. Ugone improperly provides opinions regarding SJM's patents in the following portions of his December 14, 2017 report: ¶¶ 21(c), 22(a), 22(b), 29, 69, 97, 113, 127, 1138, 139, 140, 141, 146, and 148, as well as Exhibit 4. Attached as Exhibit A are highlighted excerpts of the portions of Dr. Ugone's report that Snyders proposes to be excluded.

[4] Mr. Chandler improperly provides opinions regarding SJM's patents in the following portions of his December 14, 2017 report: ¶¶ 65, 83, 149, 151-153, 158-163, 167, 170-171, 210, 218, 221, 224, 231, as well as Exhibits 3, 6A and 6B. Attached as Exhibit B are highlighted excerpts of the portions of Mr. Chandler's report that Snyders proposes to be excluded.

made contributions to the accused products.

An Eastern District of Michigan court excluded evidence of an accused infringer's later issued-patent in a very similar circumstance. In *Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 WL 2022815, at *2 (E.D. Mich. July 7, 2009), the defendant Microsoft argued that it should be allowed to show evidence of its own patents to "rebut Plaintiffs' argument that the [asserted] patent drove the commercial success of the [accused product]." The court rejected Microsoft's argument, stating that the "[u]se of the term 'patent,' in this context, is irrelevant, prejudicial, and will cause jury confusion." *Id.* Instead, the court found that "Microsoft may argue that its own 'later and greater' specific features drove the commercial success of the Xbox, but Microsoft cannot use the terms 'patents' or 'patented' in discussing the features." *Id.*

At least one reason that evidence of a defendant's own patents on the accused devices is prejudicial is because it "takes advantage of a misconception by the public that a patent grants an affirmative right to make the patented article." *EZ Dock, Inc. v. Schafer Sys., Inc.*, No. Civ. 98-2364, 2003 WL 1610781, at *11 (D. Minn. Mar. 8, 2003). Because of the prejudice to plaintiff, other courts, including the Federal Circuit, have routinely excluded evidence of an accused infringer's later issued-patent. *See Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1572-73 (Fed. Cir. 1986) ("Introduction of [defendant's patents] would have injected frolics and detours and ... would have unduly distracted the jury from the main issues."); *Cameco Indus., Inc. v. La. Cane Mfg.*, No. 92-3158, 1995 WL 468234, at *6 (ED. La. July 27, 1995) ("[E]vidence [of defendant's patents] is likely to give the jury the false impression that a patent on the accused machine means that it is substantially different from the machine claimed in plaintiff's patent."); *Adv. Respiratory, Inc. v. Electromed, Inc.*, No. Civ. 00-2646, 2003 WL 25674810, at *1 (D. Minn. 2003) ("[I]ntroduction of the [defendant's patent] to the jury would merely cause confusion for

3

the jury and thereby prejudice the Plaintiff."); *Adv. Cardiovascular v. Medtronic, Inc.*, No. Civ. 95-03577, 2000 WL 34334583, at *6 (N.D. Cal. 2000) ("Presenting evidence to the jury that the [accused device] was covered by [defendant's] patents risked misleading the jury").

### III. SJM EXPERT OPINIONS REGARDING SJM'S PATENTS SHOULD BE EXCLUDED BECAUSE THERE IS NO EVIDENCE THAT THE ACCUSED PRODUCTS MEET THE CLAIM LIMITATIONS OF ANY CLAIM OF ANY SJM PATENT

Even if the evidence regarding SJM's patents was not prejudicial, such evidence should still be excluded because SJM has not done the work to back up SJM's damages experts' claims. Dr. Ugone and Mr. Chandler conclude that certain SJM patents "cover" the accused products. But neither expert provides, cites, or even alludes to an element-by-element analysis of any claim of any patent to back up their assertion. It is fundamental that a patent's claims define the scope of protection for that patent and are what the USPTO examines for patentability. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Without any evidence of what SJM's patents actually cover, there is nothing to support SJM's assertion that certain SJM patents cover the accused products.

Even worse, Snyders asked SJM to provide an element-by-element analysis comparing SJM's patents to the accused products during discovery. Snyders served Interrogatory No. 15, shown below:

> **INTERROGATORY NO. 15:**
>
> Do You contend for any purpose in this action that any Accused Products (or the use of any Accused Products) is covered by any claims of any patents (or any pending claims of any patent applications)? If so, identify the patents and the patent claims (or applications and pending claims) and provide a chart showing where in the Accused Products each limitation of those claims is met.

On November 6, 2017, SJM responded by stating that "St. Jude contends that its Portico valve and delivery system is covered at least by one or more of the following patents" followed by an identification of 11 U.S. utility patents, 4 U.S. design patents and a handful of foreign patents.

4

*See* Ex. C [SJM Response to Interrogatory No. 15] at 4-5. That was all. SJM did not provide any analysis at all in its response. SJM did not even identify the claims that it believes "cover" the accused products. On November 8, 2017, Snyders objected to SJM's response and stated that Synders is "entitled to know why SJM contends any such patent covers its products." Ex. D [Nov. 8 Antonelli Email]. SJM did not substantively respond until November 17, 2017, one business day before Snyders's expert report on damages was due. SJM's response still did not provide an element-by-element analysis, and instead added 6 new U.S. utility patents (as well as a number of international patents) and identified one claim for each of the 17 U.S. utility patents that allegedly "covers the accused Portico" products. *See* Ex. E [SJM Supplemental Response to Interrogatory No. 15] at 5-6.

     SJM's rebuttal reports even failed to provide any analysis of how their patents "cover" the accused products. None of SJM's expert reports included any evidence or analysis that even a single SJM patent claim covers the accused products. To support his assertion that the SJM patents cover the accused products, Dr. Ugone cites to SJM's interrogatory responses and to conversations with Dr. Sacks. *See* Ex. A at ¶ 22, n.35, 38. As explained above, SJM's interrogatory responses do not provide any analysis of how any claim of any SJM patent covers the accused products.[5] Any analysis that Dr. Sacks performed would have to be in his expert report. But the only analysis in Dr. Sacks' report relates to only one claim of the one of the 21 SJM patents that Dr. Ugone asserts cover the accused products:

---

[5] Even if SJM did provide an analysis, SJM's self-serving interrogatory responses cannot be considered competent evidence to be used by SJM. *See Hill v. Beers*, 670 F. App'x 644, 645 (9th Cir. 2016) (finding that a party's "own interrogatory responses . . . are not proper evidence.") (citing *Grace & Co. v. City of Los Angeles*, 278 F.2d 771, 776 (9th Cir. 1960) ("Normally, a party may not introduce his self-serving answers to an opponent's interrogatories.")).

5

> 385. I have reviewed U.S. Patent No. 8,814,931 (the "'931 patent"), titled "Staged Deployment Devices and Methods for Transcatheter Heart Valve Delivery Systems." SJM00269107-269126. The '931 patent was issued on August 26, 2014, and it was filed on August 18, 2011. It is my opinion that the '931 patent covers the Portico's delivery system, and allows the Portico valve to be resheathed. For example, claim 1 of the '931 patent recites: "[a] delivery device for a collapsible prosthetic heart valve." '931 14:36-37. Claim 1 continues that the delivery device comprises in part: "a first resheathing lock having a locked position and an unlocked position, the first resheathing lock in the locked position limiting movement of the carriage assembly in the longitudinal direction to a first intermediate position in the movement space, and the first resheathing lock in the unlocked position permitting movement of the carriage assembly in the longitudinal direction beyond the first intermediate position in the movement space." '931 14:42-50. The Portico's delivery system has the first resheathing lock described in claim 1.

Ex. G [Excerpts of Sacks Report] at ¶ 385. The above analysis is nowhere close to the analysis that would be required to show that the '931 patent covers the accused products. As an initial matter, Dr. Sacks only addresses the preamble and one of the nine claim limitations of the 931 patent. *See* Ex. F [931 patent] at Claim 1. The analysis that Dr. Sacks does provide is simply to quote the claim limitation and state, "Portico's delivery system has the first resheathing lock described in claim 1." Ex. G at ¶ 385. This is completely conclusory analysis and does not even meet the patent local rule standard for infringement contentions, much less kind the higher standard required for an expert opinion. And in any event, it comes nowhere close to supporting SJM's Dr. Ugone's opinion that 21 SJM patents "cover" the accused Portico products.

Mr. Chandler's report is equally bad. Mr. Chandler also relies on SJM's interrogatory responses, but instead of relying on a flawed technical expert opinion, he relies on summaries of 11 of the SJM patents provided by a third party summary service called Clarivate to conclude that the SJM patents cover the accused products. *See* Ex. B [Excerpts of Chandler Report] at ¶¶

159-160. Mr. Chandler does not even attempt to compare the summaries of the SJM patents to the accused products (which would be improper in any event), but instead states that the summaries provide "a clear descriptive patent title in order to see the descriptions of the patents developed by St. Jude that address the Portico system." *Id.* at ¶ 160. This analysis is clearly flawed for at least two reasons: 1) Mr. Chandler is not qualified and does not hold himself out to be a technical expert in this case (*see* Ex. B at ¶¶1-15); and 2) comparing a title of a patent or a third party summary of a patent is not equivalent of doing an element-by-element analysis of the claims of the patents.

The only other SJM expert to address SJM's patents is Dr. Brown. Neither Dr. Ugone nor Mr. Chandler relies on Dr. Brown's analysis, but nonetheless in his report Dr. Brown asserts (citing only to SJM's interrogatory responses as support) that one of the SJM patents (the '343 patent) covers the SJM accused products. *See* Ex. H [Excerpts of Brown Report] at ¶¶145-146. But Dr. Brown does not provide any analysis of the claim limitations. *See id.* Instead, Dr. Brown relies solely on the self-serving assertion made in SJM's interrogatory response that the '343 patent "covers" the accused Portico product. Dr. Brown should not be allowed to rely on SJM's unsupported assertion that the 343 patent covers the accused product to support his position regarding how the accused products work. Certainly, there is no reason to introduce such prejudicial opinions when Dr. Brown, a technical expert, could have simply provided opinions about how Portico actually works.

**IV.     DR. UGONE AND MR. CHANDLER'S OPINIONS RELATED TO THE SJM PATENTS SHOULD BE EXCLUDED BECAUSE THE SJM PATENTS ISSUED WELL AFTER THE HYPOTHETICAL NEGOTIATION DATE**

Even if their opinions related to the SJM patents were relevant, not prejudicial, and supported by a proper element-by-element analysis, Dr. Ugone and Mr. Chandler's opinions regarding the SJM patents still should be excluded because the utility patents issued well after

the hypothetical negotiation date. SJM admits that the hypothetical negotiation date is November 2012. *See* Ex. A at ¶ 9. SJM further admits that the SJM utility patents cited by SJM's experts issued between August 2014 and October 2017. *See* Ex. A at Table 6. In fact only 8 of the 17 SJM utility patents were even applied for before the hypothetical negotiation date. *See id.* Other courts have excluded similar evidence relating events that occurred after the hypothetical negotiation date. *See ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-cv-260, 2014 WL 11813868, at *1–2 (S.D. Cal. Feb. 21, 2014) (excluding evidence regarding patents that issued after the hypothetical negotiation date and finding argument that the parties "would have been aware of [party's] pending patent applications . . . speculative at best."); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) (finding that a license agreement that was entered into three years after the hypothetical negotiation date was "not relevant to the hypothetical negotiation analysis") (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276–77 (Fed.Cir.1999)).

## V. DR. UGONE AND MR. CHANDLER'S OPINIONS ASSERTING THAT THE ACCUSED PRODUCTS ARE NOT "EXCLUDED FUNNEL VALVE" PRODUCTS SHOULD BE EXCLUDED

Dr. Ugone and Mr. Chandler each opine that the accused Portico products are not "excluded funnel valve" products as that term is defined in the Snyders/Edwards agreement. *See* Ex. A at ¶¶ 22(e)(ii), 29, 106, and 159; Ex. B at ¶¶ 128 and 201.  These opinions are based on Dr. Sacks' technical opinion comparing the accused products to the specific embodiments set forth in Dr. Snyders' patents, and in particular Dr. Sacks' opinions that the accused products do not meet various requirements that SJM proposed, but the Court rejected, adding to the constructions of the claim terms.  *See* Motion to Exclude Certain Rebuttal Opinions of Dr. Sacks (discussing Dr. Sacks' opinions that, for example, the accused Portico products do not have conical, geodesic

bird-cage shaped frames; unitary, reversing-cusp valve elements; or valve elements attached to an apex of the frames). Dr. Ugone and Mr. Chandler should not be allowed to present these opinions because they are highly prejudicial. *See, e.g., SimpleAir, Inc. v. Microsoft Corp.,* No. 2:11-cv-416-JRG, Dkt. 571 (E.D. Tex. Jan. 8, 2014) (granting motion in limine precluding "evidence or argument by Google or its experts comparing the preferred embodiments . . . to the accused instrumentalities"). That prejudice is not close to being outweighed by any need for SJM to present these opinions. Whether the Portico valve would be an "Excluded Funnel Valve Product" under the Edwards/Snyders agreement is a side-show that has no real relevance to any issue in this case. And answering that question would require the parties to engage in substantial collateral litigation about detailed, specific terms of the agreement.

## VI. CONCLUSION

For the foregoing reasons, the Court should: 1) preclude SJM's experts from mentioning SJM's patents to the jury and from arguing or offering evidence that SJM practices its own patents and 2) preclude SJM's experts from asserting that the accused products are not "Excluded Funnel Valve" products.

Dated: January 5, 2018

Respectfully submitted,

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com
ANTONELLI, HARRINGTON &

9

THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM
The People's Petroleum Building
102 North College Avenue, 13th Floor
Tyler, Texas 75702
(903) 593-7000
(903) 705-7369 fax

Sarah J. Ring
THE RING LAW FIRM, PLLC
Texas Bar No. 24056213
sring@ringipfirm.com
9654 C Katy Frwy., Box 263
Houston, Texas  77055
Telephone:  (281) 772-6541

Katherine Jochim Van Gunst
PO Box 17730
San Diego, CA 92177
858-245-3981
katherine.vangunst.esq@gmail.com

*Attorneys for Snyders Heart Valve LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli

## CERTIFICATE OF CONFERENCE

I hereby certify that I have met the requirements of Local Rule CV-7(h).  This motion is opposed.  I conferred with counsel for SJM (Talin Gordnia) on January 4, 2018, by telephone.  The parties agreed that they were at an impasse on the issues raised by this motion, leaving them open for the Court to resolve.

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli
