FILED UNDER SEAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| SNYDERS HEART VALVE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ST. JUDE MEDICAL, CARDIOLOGY DIVISION INC.; ST. JUDE MEDICAL S.C., INC.; and ST. JUDE MEDICAL, LLC<br><br>    Defendants. | CIVIL ACTION NO. 4:16-cv-812-ALM<br><br>**FILED UNDER SEAL** |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN REBUTTAL EXPERT OPINIONS OF DR. UGONE AND MR. CHANDLER**

# **Table of Contents**

Table of Authorities ......................................................................................................................ii

I. Snyders and Its Experts Used St. Jude's Patents to Support Their Contentions; Snyders Should Not Be Able to Prevent St. Jude from Using the Same Evidence ........................................................................................ 2

II. St. Jude's Patents Are Relevant to the Reasonable Royalty Analysis and Apportionment, and Snyders Has Failed to Show That They Should Be Excluded ........................................................................................................ 2

III. St. Jude's Expert Opinions Regarding Its Patents Are Sufficiently Supported ........................................................................................................................ 5

IV. The Issue Dates of St. Jude Patents Are Not Reason to Preclude St. Jude's Experts from Discussing Them ........................................................................... 7

V. Dr. Ugone and Mr. Chandler's Opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Admissible ........................................................... 9

VI. Conclusion .................................................................................................................... 10

FILED UNDER SEAL

## Table of Authorities

**Cases**

*Abbott Point of Care, Inc. v. Epocal*, Inc.,
    868 F. Supp. 2d 1310 (N.D. Ala. 2012) .................................................................................. 5

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
    No. 5:09-CV-135, 2010 U.S. Dist. LEXIS 145630 (E.D. Tex. Mar. 31, 2010) ......................... 5

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
    No. 09-290, 2012 U.S. Dist. LEXIS 157335 (W.D. Pa. Nov. 2, 2012) ..................................... 5

*Fromson v. W. Litho Plate & Supply Co.*,
    853 F.2d 1568 (Fed. Cir. 1988) ................................................................................................ 8

*Hochstein v. Microsoft Corp.*,
    No. 04-73071, 2009 U.S. Dist. LEXIS 57698 (E.D. Mich. July 7, 2009) ................................ 4

*In re Syngenta AG MIR 162 Corn Litig.*,
    No. MDL No. 2591, 2017 U.S. Dist. LEXIS 68501 (D. Kan. May 4, 2017) ............................ 6

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ................................................................................................ 8, 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................................................ 8

*SimpleAir, Inc. v. Microsoft Corp.*,
    No. 2:11-cv-416-JRG, Dkt. 571 (E.D. Tex. Jan. 8, 2014) ...................................................... 10

*ViaSat, Inc. v. Space Sys./Loral, Inc.*,
    No. 3:12-cv-260, 2014 WL 11813868 (S.D. Cal. Feb. 21, 2014) ............................................. 8

*Wonderland NurseryGoods Co. v. Thorley Indus., LLC*,
    No. 12-196, 2014 U.S. Dist. LEXIS 7424 (W.D. Pa. Jan. 22, 2014) ........................................ 4

**Rules**
Fed. R. Evid. 403 .............................................................................................................. 2, 4, 10
Fed. R. Evid. 703 ....................................................................................................................... 6
Fed. R. Evid. 702 .................................................................................................................. 1, 6

FILED UNDER SEAL

Snyders' contention that Dr. Ugone and Mr. Chandler's discussion of St. Jude patents is irrelevant and would be unfairly prejudicial is belied by the fact that Snyders' own experts used St. Jude's patents in their opening reports. Snyders should not be able to use St. Jude's patents while barring St. Jude's responsive experts from doing the same. Moreover, Snyders has not pointed to any unfair prejudice that would substantially outweigh the clear relevance of St. Jude's patents. The patents show that St. Jude invested substantial resources to develop valuable TAVR innovations that must be accounted for in the damages analysis.

Snyders also contends that "there is no competent evidence that any claim of any SJM patent covers the accused products" (Dkt. 262 at 1), but this does not square with the substantial analysis in Dr. Ugone, Mr. Chandler, and Dr. Sacks' reports. These opinions are more than sufficient under Federal Rule of Evidence 702, and Snyders does not even attempt to show otherwise. Snyders' actual complaint is simply that the experts did not provide an element-by-element claim chart for each claim of each patent. But there is no law requiring such exacting detail. Moreover, Snyders complains about lack of detail but did not even bother to depose St. Jude's experts to explore their opinions. In addition, the mere fact that St. Jude utility patents issued after the date of the hypothetical negotiation does not make them irrelevant. Black letter law states that after-arising facts can be and often are highly relevant to the hypothetical negotiation. Snyders' complaints here go to the weight of the evidence, not its admissibility.

Finally, Snyders seeks to exclude opinions from Dr. Ugone and Mr. Chandler that the



The Court should deny Snyders' motion.

FILED UNDER SEAL

I. **Snyders and Its Experts Used St. Jude's Patents to Support their Contentions; Snyders Should Not Be Able to Prevent St. Jude from Using the Same Evidence**

Snyders and its experts have repeatedly sought to use St. Jude's own patents against St. Jude. For example, Snyders' opening infringement report cites and block quotes St. Jude's patent number 9,039,759, in an effort to support Snyders' infringement position. Ex. 1, Chronos Report at pp. 65-66. This is one of the St. Jude patents that Snyders now wants to preclude St. Jude from mentioning to the jury. *E.g.* Ex. 2, Ugone Report ¶ 70 (relying in part on the '759 patent). Snyders' opening damages report also discusses St. Jude's patents. Ex. 3, Schenk Report ¶ 193 and n.359. Snyders also repeatedly sought to use St. Jude's patents to its advantage during depositions. *See, e.g.* Ex. 4, Alkhatib Dep. at 205:7-218:8 (questioning regarding St. Jude's patent numbers 8,932,343, 9,021,674, and 9,039,759, each of which are patents that Snyders now seeks to preclude St. Jude's experts from discussing).

Snyders' motion to prevent St. Jude's experts from talking about St. Jude patents is the classic sword and shield problem. If Snyders' experts can use the patents, so can St. Jude's.

II. **St. Jude's Patents Are Relevant to the Reasonable Royalty Analysis and Apportionment, and Snyders Has Failed to Show that They Should Be Excluded**

In Section II of its motion, Snyders appears to seek a motion *in limine*-type order based on Federal Rule of Evidence 403, without ever mentioning Rule 403 or showing how such an exclusion order would be justified under the rule. But even if Snyders had tried, Snyders could not show (and has not shown) that the clear probative value of St. Jude's patents for the purposes of showing flaws in the royalty analysis of Snyders' damage expert is substantially outweighed by any purported danger of unfair prejudice. *See* Fed. R. Evid. 403.

St. Jude's patents covering its TAVR innovations are relevant to rebut the damages opinion of Ms. Schenk and to show that she failed to account for St. Jude's contributions to

TAVR technology. Snyders tries to brush this aside by asserting—without explanation—that "[w]hether SJM has a patent on those contributions has nothing to do with whether SJM made contributions to the accused products." Dkt. 262 at 2-3. But of course it does. The fact that the Portico products use various TAVR innovations that St. Jude patented shows that St. Jude invested and made its own contributions to TAVR technology that must be accounted for. It also shows that those contributions were valuable. Ms. Schenk erroneously attributes almost all of the value of the Portico products to basic TAVR features allegedly claimed by the Snyders patents and none to St. Jude's patented TAVR innovations. As one example, Ms. Schenk attributed the entire value of "resheathability" to the Snyders patents, notwithstanding that none of the asserted claims refer to resheathability. *E.g.* Ex. 3, Schenk Report ¶¶ 84, 264. Dr. Ugone responded by pointing out that St. Jude's own specific patented technology enables Portico's resheathablity, which Ms. Schenk's opinion fails to account for. Ex. 2, Ugone Report ¶ 127. The fact that St. Jude has a patent on this resheathable technology shows St. Jude's "resheathable" innovation was an advance over existing TAVR technology and that Snyders' damages expert cannot attribute the value of "resheathability" entirely to the Snyders' patents.

Further confirming the relevance of St. Jude's patents, it is Snyders' damages expert who first raised the issue. Ex. 3, Schenk Report ¶ 193 and n.359 (providing several reasons for why she did not attribute significant commercial value to St. Jude's patents). Dr. Ugone and Mr. Chandler merely responded. Mr. Chandler, for example, noted that Ms. Schenk's decision to ignore St. Jude's patents was erroneous because "one of the key considerations during a licensing negotiation is whether the Licensee has its own patents and technology that cover the relevant products." Ex. 5, Chandler Report ¶ 153. Snyders has not challenged Mr. Chandler's qualifications as a licensing expert. Dr. Ugone, for example, explained that it "is unreasonable

for Ms. Schenk to assume that a company needs to enforce its patents against competitors in order for the company to place value upon those patents." Ex. 2, Ugone Report ¶ 140. Snyders has not challenged Dr. Ugone's qualifications as an economics and damages expert. Snyders may disagree with St. Jude's experts, but that is not reason to exclude them.

Snyders has also failed to show that Dr. Ugone and Mr. Chandler's discussion of St. Jude patents is somehow unfairly prejudicial or confusing in a way that substantially outweighs its probative value. *See* Fed. R. Evid. 403. The *Hochstein* case Snyders cites does not apply. *See* Dkt. 262 at 3. *Hochstein* concerned a motion *in limine*, not a *Daubert* challenge, and the defendant there argued its own patents were relevant to rebut the plaintiff's arguments that the patent in suit "drove the commercial success" of the accused products. *Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 U.S. Dist. LEXIS 57698, at *5 (E.D. Mich. July 7, 2009). Here, the issue is a *Daubert* challenge, and St. Jude's experts are using St. Jude's patents for something different—to show that Ms. Schenk did not properly apportion the purported royalty rate.[1] A decision from the Western District of Pennsylvania confirms that a defendant's own patents are admissible for this purpose. *Wonderland NurseryGoods Co. v. Thorley Indus., LLC,* No. 12-196, 2014 U.S. Dist. LEXIS 7424, at *5 (W.D. Pa. Jan. 22, 2014) (denying motion to exclude a defendant's own patents under Rule 403, noting that "the Court agrees with [defendant] that . . . [defendant's patents] are relevant in the calculation of an appropriate reasonable royalty").

Snyders also cites several motion *in limine* decisions in which a court decided to exclude evidence of a party's own patents. Dkt. 262 at 3-4 (citing the *EZ Dock, Glaros, Cameco, Advanced Respiratory,* and *Advanced Cardiovascular* cases). But none of these cases says that there is a per se rule that a party's own patents should be excluded. And none concerns the

---

[1] Further, *Hochstein* does not concern a situation where, as here, the plaintiff's expert brought up the issue of the defendant's patents first, and then the defendant's experts responded.

4

situation here, where a defendant is using its own patents to rebut a plaintiff's damages theory. Courts commonly find defendants' patents relevant to various issues, including damages, and not unfairly prejudicial. *E.g. Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2012 U.S. Dist. LEXIS 157335, at *6-7 (W.D. Pa. Nov. 2, 2012) (finding defendant's own patents and the size and scope of its patent portfolio relevant to issues such as copying/willfulness and "calculation of alleged damages by a reasonable royalty analysis" and not unfairly prejudicial); *Abbott Point of Care, Inc. v. Epocal*, Inc., 868 F. Supp. 2d 1310, 1328-29 (N.D. Ala. 2012) (allowing evidence of defendant's own patents as relevant to willful infringement and equitable estoppel/unclean hands); *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 5:09-CV-135, 2010 U.S. Dist. LEXIS 145630, at *8 (E.D. Tex. Mar. 31, 2010) (allowing evidence of defendant's own patents for the purpose of rebutting allegations of commercial success and willfulness).

Finally, there is little risk of potential jury confusion. St. Jude's patents are directed to discrete aspects of the Portico products. And as courts commonly note, any potential for confusion can be adequately addressed with a limiting instruction that makes clear that patents give a right to exclude, not a right to practice. *E.g. Abbott Point of Care, Inc.*, 868 F. Supp. 2d at 1329; *Advanced Tech. Incubator, Inc.*, 2010 U.S. Dist. LEXIS 145630 at *8.

Because St. Jude's patents are relevant to rebut Ms. Schenk's damages opinions (including her specific opinion that St. Jude patents should not be given significant commercial value), and because Snyders has not shown any unfair prejudice that would substantially outweigh the probative value of this evidence, the Court should deny Snyders' motion.

**III.    St. Jude's Expert Opinions Regarding Its Patents Are Sufficiently Supported**

Snyders complains that St. Jude did not provide an "element-by-element analysis" of each claim to "back up" its expert's assertions. Dkt. 262 at 4. But Snyders has not cited any law

saying that such element-by-element analysis is necessary or that St. Jude's experts must "meet the patent local rule standard for infringement contentions." *Id.* at 6. That is because there is none. Federal Rule of Evidence 702, which is the standard for admissible opinions, is not so rigid, and Snyders has not even tried to show that the opinions are inadmissible under Rule 702.

The fact is that St. Jude and its experts have provided a more than adequate explanation of the basis for their opinions, as required by Rule 702. *E.g.* Ex. 2, Ugone Report ¶¶ 22, 29, 69, 70, 127, 138-141, 146, 148; Ex. 5, Chandler Report ¶¶ 148, 157-160, 221, 222, 225 and Exs. 3, 6A and 6B; Ex. 6, Sacks Report ¶¶ 384-385. St. Jude also provided a detailed supplemental response to Snyders' interrogatory regarding St. Jude's own patents, which its experts properly relied on.[2] *See* Dkt. 263-4 at pp. 5-7. That response identified a list of patents covering the Portico products by patent number and, for each patent, identified at least one independent claim and stated which specific Portico product that claim covered. *Id*. Snyders never complained about or objected to this supplemental response. Further, Snyders has the Portico products, it has the St. Jude patents, and it has the detailed list of which claims cover which products. Indeed, it has never actually disputed that any of the identified claims cover the Portico products.

If Snyders thought that any of the Dr. Ugone or Mr. Chandler opinions regarding St. Jude patents were unclear or incomplete, it could have sought to depose the experts. Tellingly, it did not. Snyders should not be heard to complain now. *See, e.g. In re Syngenta AG MIR 162 Corn Litig.*, No. MDL No. 2591, 2017 U.S. Dist. LEXIS 68501, at *208 (D. Kan. May 4, 2017) ("the

---

[2] Snyders contends that St. Jude's interrogatory responses "cannot be considered competent evidence to be used by [St. Jude]." Dkt. 262 at 5 n.5. But the issue here is whether St. Jude's **experts** can rely on the patents, not whether St. Jude itself can. There is nothing impermissible about an expert relying on an interrogatory answer. *See, e.g.* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of . . . ."). In fact, Snyders' own damages expert repeatedly relied on Snyders' interrogatory answers. *E.g.* Ex. 3, Schenk Report at footnotes 2, 5, 9-13, 16-20, 22, 27-28, 509-512.

FILED UNDER SEAL

Court rejects the argument that certain opinions as stated in the expert report are too cursory or vague . . . Syngenta had ample opportunity in its deposition of [the expert] to explore the scope and details of those opinions"). If anything, Snyders' complaints now about a lack of element-by-element analysis go to the weight of the expert testimony, not its admissibility.

Snyders also complains specifically that "Mr. Chandler is not qualified and does not hold himself out to be a technical expert . . . ." Dkt. 262 at 7. But Snyders has not challenged Mr. Chandler's qualifications as a licensing expert. And Mr. Chandler clearly explains that licensing professionals commonly review and analyze a potential licensing partner's patent portfolio. *E.g.* Ex. 5, Chandler Report ¶ 160. Snyders does not challenge this, nor does Snyders explain how Mr. Chandler's analysis of St. Jude's patents falls short of the standard for a licensing expert.[3]

Snyders' motion also ignores that the Ugone and Chandler reports are *responsive* reports.

Report ¶¶ 264-265. Snyders has maintained that these "opinions" are more than sufficient, and that "SJM's complaints are fodder for cross-examination, not grounds for exclusion." Dkt 245 at 9. In fairness, Snyders cannot contend that Ms. Schenk's opening report is sufficient while maintaining that St. Jude's responsive reports, which contain far more detail, are not.

**IV.     The Issue Dates of St. Jude Patents Are Not Reason to Preclude St. Jude's Experts from Discussing Them**

Snyders contends that because St. Jude's utility patents issued after the hypothetical negotiation date (November 2012), they should be excluded. Dkt. 262 at 7-8. Snyders is wrong on the law. "[T]he Supreme Court [has] recognized that factual developments occurring after the

---

[3] Snyders also complains of Dr. Brown's opinions regarding St. Jude's '343 patent. Dkt. 262 at 7. As this issue is the subject of a separate motion by Snyders, St. Jude does not address it here.

7

FILED UNDER SEAL

date of the hypothetical negotiation can inform the damages calculation . . . ." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009); *see also Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988) (The hypothetical negotiation methodology "speaks of negotiations as of the time infringement began, yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators."). Moreover, the novel features of St. Jude's products existed at the time of the hypothetical negotiation and their value must be accounted for, regardless of when St. Jude's patents issued for those features. In any event, it is undisputed that many of the patents were actually already applied for by the time of the hypothetical negotiation. *See* Dkt. 262 at 8. For all of these reasons, the mere fact that issue dates of St. Jude utility patents post-date the hypothetical negotiation is not grounds to exclude them.

Snyders' cases do not show otherwise. In *ViaSat,* the plaintiff sought to introduce its own non-asserted patents to rebut the contention that there were available non-infringing alternatives. *ViaSat, Inc. v. Space Sys./Loral, Inc.,* No. 3:12-cv-260, 2014 WL 11813868, at *2–3 (S.D. Cal. Feb. 21, 2014). Thus the timing of when the non-asserted patents issued (i.e. whether, at the relevant time, the alternatives were actually "non-infringing") mattered more. *Id.* Here, St. Jude's patents are not used to rebut a contention of non-infringing alternatives. Instead, they show that there is substantial value in the accused Portico products that is not attributable to the asserted patents; the actual issue date is not relevant to that analysis.

*Laser Dynamics* is similarly inapplicable. It does not support the proposition that facts occurring after the date of the hypothetical negotiation are per se irrelevant. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012). Instead, it found that in the factual context of that case, a particular settlement agreement document was not relevant. For

example, the court found that the "changing technological and financial landscape in the market" in the three years between the date of the hypothetical negotiation and the settlement agreement meant that the agreement was not all that relevant. *Id.* The evidence at issue in *Laser Dynamics* was also different—it was a lawsuit settlement agreement, not a defendant's own patents.

St. Jude's patents, many of which were already applied for at the time of the hypothetical negotiation, are relevant to show the value of the portion of Portico products attributable to St. Jude's own research and development and are properly considered as part of the reasonable royalty analysis.

**V.     Dr. Ugone and Mr. Chandler's Opinions that the Portico Products Are Not** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Snyders contends that Dr. Ugone and Mr. Chandler's opinions that the accused Portico

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FILED UNDER SEAL

This issue is not a "side show," as Snyders asserts.  *See* Dkt. 262 at 9.  It is directly relevant.  █████████████████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Snyders has failed to show that these opinions would be unfairly prejudicial in a way that would "substantially outweigh" their clear probative value.  *See* Fed. R. Evid. 403.  Snyders contends that it would "require the parties to engage in substantial collateral litigation" (Dkt. 262 at 9), but the facts do not support that assertion.  As explained above, there is no dispute that the ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
construction.  The unpublished *SimpleAir* order does not show otherwise.  *See* Dkt. 262 at 9.  The Court there decided the motion *in limine* without explaining the particular testimony being

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

### VI.     Conclusion

For the foregoing reasons, the Court should deny Snyders' motion.

Dated: January 19, 2018                     Respectfully submitted,
                                            */s/ James C. Tidwell*

10

FILED UNDER SEAL

James C. Tidwell
Texas Bar No. 20020100
WOLFE, TIDWELL & MCCOY, LLP
320 N. Travis St.
Suite 205
Sherman, TX 75090
Telephone: (903) 868-1933
Facsimile: (903) 892-2397
Email: jct@wtmlaw.net

Joseph W. Winkels
MN Attorney No: 0349707
CARLSON, CASPERS, VANDENBURGH, LINDQUIST &
SCHUMAN, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
Facsimile: (612) 436-9605
Email: jwinkels@carlsoncaspers.com

Andrei Iancu
Morgan Chu
Alan Heinrich
Talin Gordnia
Leah Johannesson
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 203-7537
Facsimile: (310) 203-7199
Email: aiancu@irell.com

*Attorneys for Defendants St. Jude Medical, Cardiology Division Inc., St. Jude Medical S.C., Inc. and St. Jude Medical, LLC*

11

FILED UNDER SEAL

## CERTIFICATE OF SERVICE

   I hereby certify that on the 19th day of January 2018, I served counsel for Plaintiff Snyders Heart Valve LLC by email.

                                              */s/ James C. Tidwell*
                                              James C. Tidwell

## CERTIFICATE OF AUTHORIZATION TO SEAL

   I hereby certify that under Local Rule CV-5(a)(7), a Protective Order (Dkt. No. 116) has been entered in this case authorizing the parties and Clerk to file motions and documents under seal in compliance with the Protective Order.

                                              */s/ James C. Tidwell*
                                              James C. Tidwell