## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| SNYDERS HEART VALVE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ST. JUDE MEDICAL, CARDIOLOGY DIVISION INC., *et al.*,<br><br>    Defendants. | CIVIL ACTION NO. 4:16-cv-812-ALM<br><br>**JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF SNYDERS' MOTION TO EXCLUDE CERTAIN REBUTTAL EXPERT OPINIONS OF DR. UGONE AND MR. CHANDLER**

**I. DR. UGONE'S AND MR. CHANDLER'S DISCUSSIONS OF SJM'S PATENTS ARE HIGHLY PREJUDICIAL AND UNNECESSARY TO THEIR OPINIONS**

SJM's experts need not discuss SJM's patent portfolio in order to express their opinions. SJM does not dispute this or even argue that it would be prejudiced if the testimony were excluded. To the contrary, SJM admits that "the novel features of St. Jude's products existed at the time of the hypothetical negotiation" (Dkt. 280 at 8), meaning that SJM's experts could address those alleged features outside the context of SJM's patents. For instance, omitting reference to the '931 patent does not detract from the substance of Dr. Ugone's opinion that the Portico's "resheathable" technology drives value. *See* Dkt. 262, Ex. A at ¶ 127. Likewise, Mr. Chandler is free to opine concerning the value of technology SJM allegedly contributed to the Portico. Indeed, in a negotiation taking place in November 2012, the alleged value of unpatented features of the Portico product itself is all SJM *could have* brought to the negotiating table, as none of the utility patents its experts now purport to rely on had issued at that time. In short, SJM's experts' opinions concerning SJM's patents are unnecessary and excluding them would not prejudice SJM in the least.

On the other hand, permitting Dr. Ugone and Mr. Chandler to offer opinions concerning SJM's patents would be highly prejudicial to Snyders (*see* Dkt. 262 at 3-4), and SJM does not actually dispute this. Rather than address the relevant issues, SJM resorts instead to factual distinctions of Snyders' case law which are irrelevant to the purpose for which Snyders cited those cases. Particularly where SJM makes no effort to show a need or basis for referencing its patents, the Court should shield the jury from hearing this misleading and prejudicial testimony.

**II. SJM'S PATENTS ARE IRRELEVANT TO A HYPOTHETICAL NEGOTIATION TAKING PLACE IN NOVEMBER 2012**

In asserting that its later-issued patents are relevant, SJM quotes selectively from *Lucent*

*Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), and *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568 (Fed. Cir. 1988). In doing so, it takes these cases out of context and far beyond their intended reach. *Lucent Technologies* stands for the point that evidence of an infringer's usage of the infringing product (*i.e.*, usage after infringement began) ***may*** be helpful to the jury ***under appropriate circumstances***. 580 F.3d at 1333-34. The generalized principle recited from *Fromson* is even less helpful. 853 F.2d at 1568. These cases do not hold that courts may consider any and all post-negotiation events (if they did, there would be little purpose in selecting a specific time-point for the hypothetical negotiation). And SJM does not point to a single case in support of its proposition that a jury may consider patents issuing after the hypothetical negotiation date. By contrast, courts have explicitly excluded evidence of post-hypothetical negotiation patents—even when the patent applications were pending at the time of the hypothetical negotiation. *See* Dkt. 262 at 7-8 (citing cases).

**III.  SNYDERS DID NOT "OPEN THE DOOR" TO DR. UGONE'S AND MR. CHANDLER'S OPINIONS CONCERNING SJM'S PATENTS**

Because it cannot provide a legitimate reason for its experts' testimony, SJM argues instead that Snyders' experts somehow opened the door to these improper opinions. Dkt. 280 at 2. SJM is mistaken. SJM makes no effort to explain how its experts' wide-ranging discussion of SJM's patents rebuts or even relates to the opinions of Snyders' experts. SJM argues that Dr. Chronos' infringement report quotes from SJM's '759 patent, but fails to explain how its economic experts' damages opinions rebut the issue of infringement. Further, SJM notes that Ms. Schenk mentions SJM's deficient interrogatory response and apparently inaccurate website, but again fails to explain how its experts' opinions address either of those topics. Finally, questions asked of an SJM witness during a deposition bear no relation to rebuttal of Snyders' experts'

opinions. Thus, in addition to being irrelevant and prejudicial, these opinions are not proper rebuttal material.

IV.     THESE OPINIONS ARE UNSUPPORTED AND UNRELIABLE

Dr. Ugone's and Mr. Chandler's opinions do not meet the standard of Federal Rule of Evidence 702. To show that a patent claim "covers" a device, one must compare the full scope of the claim, element-by-element, to that device. One cannot show that a patent claim "covers" a device by looking at a single limitation (as did Dr. Sacks); one cannot show it by making a bare assertion that it "covers" the device (as did SJM's response to Interrogatory No. 15); one cannot show it by reading a third party summary service (as did Mr. Chandler).

In short, ***nothing*** that Dr. Ugone and Mr. Chandler relied on compares the full scope of any of SJM's patent claims to the Portico. As such, their opinions that these patents "cover" the Portico are not based on sufficient data, or on reliable principles and methods for assessing whether a claim reads on a device. It is not Snyders' job to make SJM's case for it, as SJM now seems to suggest. Dkt. 280 at 6 ("Snyders has the Portico products, it has the St. Jude patents, and it has the detailed list of which claims cover which products."). Nor can SJM complain that Snyders "never [] disputed that any of the identified claims cover the Portico products," when SJM ***withheld the very discovery*** that would have enabled Snyders to assess SJM's unsupported assertions.[1] *See id.* SJM's attempt to obscure its own severely lacking analysis by cloaking it in

---

[1] Relatedly, Snyders was under no obligation to depose SJM's experts, particularly when Snyders served an interrogatory directed at discovering this exact information. Snyders should not have to engage in duplicative discovery to get answers it is entitled to—if SJM had possession of this information (as its experts now claim), it needed to produce that information during fact discovery via a full and complete response to Snyders' interrogatory. *Freeny v. Murphy Oil Corp.*, No. 2:13-cv-791-RSP, 2015 WL 11089607, at *3 (E.D. Tex. Jun. 4, 2015) ("Defendant's attempt to shift the onus onto Plaintiffs for not utilizing the proper discovery channels to obtain this information is equally unavailing. . . . Indeed, requiring the party seeking discovery to obtain the information through deposition—outside of the fact discovery process—

expert opinion should not be permitted. This is precisely the type of unreliable, unsupported opinion that F.R.E. 702 is designed to protect against.

### V. DR. UGONE'S AND MR. CHANDLER'S OPINIONS REGARDING THE "EXCLUDED FUNNEL VALVE" ARE PREJUDICIAL AND IRRELEVANT

The Edwards agreement carries no probative value, because it was directed to *noninfringing* products (as SJM appears to admit), whereas for the damages analysis SJM's Portico device must be considered to be *infringing*. No comparison can be made between the terms of the Edwards agreement and the terms Snyders would have entered with SJM during a hypothetical negotiation. SJM ignores this crucial distinction.

On the other hand, permitting SJM's experts to opine that the Portico is not an "Excluded Funnel Valve" would be highly prejudicial, as it would encourage the jury to compare the Portico device to Figures 2 and 3 of the '782 patent, rather than the claims themselves. SJM has sought to push this improper comparison throughout every stage of this case—from its rejected claim construction positions, to its meritless invalidity defenses, and now via its damages experts' improper opinions. Permitting SJM's experts to argue that the Portico is not an "Excluded Funnel Valve" as described in an irrelevant agreement would cause a substantial risk of jury confusion between issues of damages and infringement, and would be highly prejudicial to Snyders. Accordingly, the prejudicial effect of this testimony far outweighs its (non-existent) probative value.

Dated: January 29, 18          Respectfully submitted,

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com

---

does not comport with this Court's discovery procedures or local practice.") (granting motion to exclude).

Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com
ANTONELLI, HARRINGTON & THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM
The People's Petroleum Building
102 North College Avenue, 13th Floor
Tyler, Texas 75702
(903) 593-7000
(903) 705-7369 fax

Sarah J. Ring
THE RING LAW FIRM, PLLC
Texas Bar No. 24056213
sring@ringipfirm.com
9654 C Katy Frwy., Box 263
Houston, TX 77055
Telephone: (281) 772-6541

Katherine Jochim Van Gunst
PO Box 17730
San Diego, CA 92177
858-245-3981
katherine.vangunst.esq@gmail.com

*Attorneys for Snyders Heart Valve LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 29th day of January 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                           */s/ Matthew J. Antonelli*
                                           Matthew J. Antonelli