**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SNYDERS HEART VALVE LLC,<br><br>      Plaintiff,<br><br>         v.<br><br>ST. JUDE MEDICAL, CARDIOLOGY<br>DIVISION INC.; ST. JUDE MEDICAL<br>S.C., INC.; and ST. JUDE MEDICAL, LLC<br><br>      Defendants. | CIVIL ACTION NO. 4:16-cv-812-ALM<br><br>**<u>FILED UNDER SEAL</u>** |

**<u>DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN</u>**
**<u>REBUTTAL EXPERT OPINIONS OF DR. UGONE AND MR. CHANDLER</u>**

I.      **It Would Be Fundamentally Unfair to Preclude St. Jude from Referencing the Same St. Jude Patents that Snyders Attempts to Use Against St. Jude**

Snyders wants to use St. Jude's patents to support its own experts' analysis, but then seeks to prevent St. Jude's experts from referencing those same patents.  This sword and shield tactic is unfair and contradicts the authority Snyders cites.  Those cases relate to wholesale preclusion of both parties from referencing a party's own patents not in suit.  (Dkt. 262 at 3-4; Dkt. 290 at 2).  Here, even if St. Jude's patents were somehow prejudicial (they are not), Snyders has already let the proverbial "cat out of the bag" by relying on St. Jude's patents itself.  Realizing the conundrum it has created for itself, Snyders attempts to distinguish its references to St. Jude's patents from St. Jude's references to those patents.  However, Snyders cites to no authority for its unbalanced position that *it alone* gets to choose who may reference St. Jude's patents, and how the St. Jude patents may be discussed.  There is no authority for Snyders' position because it is fundamentally unfair.  The Court should reject it.

II.     **Snyders Has Failed to Show that Dr. Ugone's and Mr. Chandler's Discussions of St. Jude's Patents Should Be Excluded**

Snyders has not established that it would be unfairly prejudiced by Dr. Ugone's and Mr. Chandler's discussion of St. Jude patents.  Instead, Snyders tries to shift the burden onto St. Jude to establish a lack of prejudice.  *See* Dkt. 290 at 2-3.  That is not the law.  Snyders brought this motion and Snyders bears the burden to explain how it would be unfairly prejudiced, and how any such prejudice outweighs the probative value.  Snyders has not done so.

Instead, Snyders simply presumes prejudice would occur if the St. Jude patents are referenced.  *See* Dkt. 262 at 3-4; Dkt. 290 at 2.  That is not the law and does not make sense in this case.  *See* Dkt. 280 at 4-5 (distinguishing cases cited by Snyders).  First, reference to the St. Jude patents could not itself be unfairly prejudicial, because Snyders has repeatedly referenced

them in its own expert reports.  Second, a defendant's use of its own patents is not *per se* prejudicial, nor is it *per se* inadmissible.  Instead, courts look to the circumstances of each case. Here, St. Jude's experts reference St. Jude's patents for purposes relating to damages, a use that courts have expressly found permissible.  *See id.* (citing *Wonderland NurseryGoods Co. v. Thorley Indus., LLC,* No. 12-196, 2014 U.S. Dist. LEXIS 7424, at *5 (W.D. Pa. Jan. 22, 2014) and *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2012 U.S. Dist. LEXIS 157335, at *6-7 (W.D. Pa. Nov. 2, 2012)).  In contrast, Snyders has cited no authority to support its contention that St. Jude's use of its own patents for damages purposes is impermissible.

St. Jude would be prejudiced by the exclusion of its experts' references to St. Jude's patents.  For example, St. Jude's licensing expert, Mr. Chandler, clearly explains that licensing professionals commonly review and analyze a potential licensing partner's patent portfolio, which would include patent applications.  *E.g.* Dkt. 280-6, Chandler Report ¶ 160.  ███

███████████████████████████████████████████████████

Dkt. 280-4, Schenk Report at ¶ 193 and n. 359.  That Snyders disagrees with St. Jude's experts' analyses goes to the weight of the evidence; it is not a basis to exclude references to St. Jude's patents.  Moreover, the patent references are relevant and exclusion of them would prejudice St. Jude because they show that St. Jude's innovations were new and important, and that St. Jude invested substantial resources in them.

## III.   The Issue Dates of St. Jude Patents Are Not Reason to Preclude St. Jude's Experts from Discussing Them

The case law is clear, and Snyders does not dispute, that facts arising after the date of the hypothetical negotiation can inform the damages analysis.  Moreover, Snyders admits that at least 8 of the 17 St. Jude utility patents had been filed and were pending at the time of the

hypothetical negotiation.[1]  Dkt. 262 at 8.  The parties to the negotiation would have been aware of those pending applications, and thus at a minimum those patents are relevant.  Moreover, Snyders cites no case excluding reference to a defendant's patents that post-date the hypothetical negotiation and that were referenced for purposes of a damages analysis.  The cases cited by Snyders are readily distinguished.  *See* Dkt. 280 at 8-9 (noting that *ViaStat* related to use of plaintiff's non-asserted patents regarding possible non-infringing alternatives and that *Laser Dynamics* dealt with unique facts regarding a later-reached settlement agreement, not a patent).  Despite St. Jude's differentiation of those cases in its response brief, Snyders' reply brief provided no additional or alternative authority on the issue.  St. Jude's patents are relevant and properly part of the reasonable royalty analysis.

## IV.    St. Jude's Expert Opinions Regarding Its Patents Are Sufficiently Supported

Snyders again complains that St. Jude's experts did not provide a detailed, "element-by-element" comparison of its products to the claims of the St. Jude patents.  Despite bearing the burden on this motion, Snyders again provides no authority mandating such a rigid analysis.  Indeed, there is none.  Indeed, to require such a showing would result in "substantial collateral litigation" that Snyders itself has argued would be improper.  *See* Dkt. 262 at 9.

Moreover, Snyders has never even disputed that any of the identified claims cover the Portico products.[2]  As a justification for not challenging St. Jude's patent claim coverage, Snyders now contends that it could not dispute St. Jude's patent coverage assertions because St. Jude "withheld the very discovery that would have enabled Snyders to assess" St. Jude's

---

[1] In fact, ▮▮▮ of the utility patent applications had published.  *See* U.S. Patent Nos. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Further, ▮▮▮ of the design patents St. Jude relies on had issued prior to the hypothetical negotiation as well.  *See* U.S. Pat. Nos. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[2] The absence of any dispute is not surprising because the preferred embodiments disclosed in the patents are similar to the Portico device, further making an element-by-element analysis unnecessary.

assertions.  Dkt. 290 at 4.  That is wholly incorrect, and the *Freeny* case cited by Snyders does

not support its position.  *Id*. at n.1.  In *Freeny*, the defendant failed to produce documents, and

later argued that the plaintiff could have somehow found the documents by deposing defendant's

expert.  *See Freeny v. Murphy Oil Corp*., No. 2:13-CV-791-RSP, 2015 U.S. Dist. LEXIS

118731, at *4, 6 (E.D. Tex. June 3, 2015).  Here, Snyders is not complaining that it lacks any

document or other information.  Strikingly, Snyders does not actually identify what discovery, if

any, St. Jude purportedly withheld.  That is because St. Jude provided ample information for

Snyders to allege any challenges to St. Jude's position.  For example, St. Jude provided detailed

supplemental responses to Snyders' interrogatory regarding St. Jude's own patents, including

identifying at least one specific claim from each patent and identifying which product or

products were covered by each claim.  *See* Dkt. 263-4 at 5-7.  Snyders has had all the necessary

information—the specific patents, the specific claims and the specific products covered (*see* Dkt.

280 at 6)—yet it did not complain about any evidentiary insufficiency during discovery or seek

to depose any of St. Jude's experts.

Snyders has also failed to explain or reconcile how the far more conclusory and

unsubstantiated opinions of its opening experts could be sufficient, while the amply supported

positions of St. Jude's experts allegedly are not.  For example, Ms. Schenk's bare citation to ███

██████████ is the only support for her conclusory recitations of the alleged ████████ of the

Snyders' patents.  *E.g.* Dkt. 280-4, Schenk Report ¶¶ 264-265.  Snyders has maintained that

these "opinions" are more than sufficient, and that "SJM's complaints are fodder for cross-

examination, not grounds for exclusion."  Dkt. 245 at 9.  Snyders' double standard is unfair and

unsupported by the law or the facts.

**V.**      **Dr. Ugone and Mr. Chandler's Opinions that the Portico Products Are Not ██████████████████████████ Are Relevant and Admissible**

Snyders now confusingly argues that the ██████ agreement is not probative "because it was directed to noninfringing products…." Dkt. 290 at 5.  It is unclear what Snyders means, but whatever its argument is, it ignores the fact that ███████████████████████████████ The ████████████████████████████████████████████████ Ex. 1 at SNYDERS_0002436-37 and SNYDERS_0002444, █████████████ (attached).  For that reason alone the license is relevant.  More specifically, the ██████ agreement has substantial probative value because it conditioned that license on █████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ *See* Dkt. 280-3 ¶ 106(b) (citing the ████████ license agreement at SNYDERS_00002436).  Thus, the license shows what amount Dr. Snyders would have been willing to license ████████████████████████████████ ████████████████ and therefore is directly relevant and highly probative to a reasonable royalty analysis.

In analyzing the ████████ license, the jury will consider whether the Portico device is an ████████████████████████████ and will compare the Portico device to Figures 2 and 3 of the '782 patent.  St. Jude's experts provide reasoned and supported opinions to aid in that comparison.  That analysis is distinct from any comparison of the Portico device to the claims.  There is nothing prejudicial or controversial about such a comparison, and the relevant and helpful opinions should be allowed.

Dated: February 6, 2018                    Respectfully submitted,

                                           */s/ James C. Tidwell*
                                           James C. Tidwell
                                           Texas Bar No. 20020100

5

WOLFE, TIDWELL & MCCOY, LLP
320 N. Travis St.
Suite 205
Sherman, TX 75090
Telephone: (903) 868-1933
Facsimile: (903) 892-2397
Email: jct@wtmlaw.net

Joseph W. Winkels
MN Attorney No: 0349707
CARLSON, CASPERS, VANDENBURGH, LINDQUIST &
SCHUMAN, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
Facsimile: (612) 436-9605
Email: jwinkels@carlsoncaspers.com

Morgan Chu
Alan Heinrich
Talin Gordnia
Leah Johannesson
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
Telephone: (310) 203-7537
Facsimile: (310) 203-7199
Email: aheinrich@irell.com

*Attorneys for Defendants St. Jude Medical,
Cardiology Division Inc., St. Jude Medical S.C.,
Inc. and St. Jude Medical, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of February 2018, I served counsel for Plaintiff Snyders Heart Valve LLC by email.

/s/ James C. Tidwell
James C. Tidwell

**CERTIFICATE OF AUTHORIZATION TO SEAL**

I hereby certify that under Local Rule CV-5(a)(7), a Protective Order (Dkt. No. 116) has been entered in this case authorizing the parties and Clerk to file motions and documents under seal in compliance with the Protective Order.

/s/ James C. Tidwell
James C. Tidwell